[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTIONS TO STRIKE (##113 AND 119)
Before the court are the defendants' Jukonski Truck Sales and Services, Ltd.'s (Jukonski) and the defendant Page Warner, Inc.'s (Page) motions to strike. Jukonski moves to strike the third and fourth counts of the plaintiffs' revised complaint, dated May 17, 2002 (#111) (complaint). Page moves to strike the ninth and tenth counts of the complaint. For the following reasons, the defendants' motions are denied.
 I FACTS
The plaintiffs in this matter are Kimberly A. Dingwall, executrix of the estate of George Dingwall (Dingwall), and Kimberly A. Dingwall, individually. In the third count of the complaint, the plaintiffs allege CT Page 10182 wrongful death, pursuant to General Statutes §§ 52-555, et seq. They allege that Dingwall died on January 28, 2000. At all relevant times, he was employed as a sergeant with the Middletown Police Department (department). Jukonski had a contract with the City of Middletown to provide tires, and tire repair and replacement road service to the department. Paragraph 4 of the third count alleges:
"[d]espite the fact that it knew or should have known that Goodyear Tire Rubber Company [Goodyear] had issued product service bulletins recommending that its winter snow tires be applied to all four-wheel positions of all police and emergency service vehicles in order to ensure safe operation and to optimize the handling, stability and traction of said vehicles, and despite the fact that it knew or should have known that an improper tire configuration on a police vehicle engaged in a high speed pursuit, could compromise the stability of the vehicle and could lead to a loss of control of the vehicle and thereby result in severe injury or death of the occupants of said vehicle, the defendant Jukonski . . ., in reckless disregard of the safety of the operators and occupants of police cruiser #9806, including the plaintiff's decedent, George Dingwall, improperly installed Goodyear snow tires on less than all four wheels of said vehicle, in violation of the manufacturer's safety guidelines and recommendations, and thereby allowed said police cruiser to be operated on January 28, 2000 with two front radial tires, one rear radial tire, and one rear snow tire, in violation of the manufacturer's safety guidelines and recommendations."
The plaintiffs further allege that on January 28, 2000, Dingwall was assigned cruiser #9806. On that date, in the early afternoon, defendant Bryant Browne (Browne) and an accomplice fled the scene of a burglary in an automobile operated by Browne. Along with others, Dingwall engaged in a high speed pursuit of the vehicle driven by Browne on Route 9. The plaintiffs also allege that, during this pursuit, Dingwall `lost control of his vehicle . . ., went into an oversteer condition and spun off the road into a group of trees located on the median divider of Route 9 as a result of the improper configuration of the tires on his police cruiser in violation of the safety recommendations and guidelines of the manufacturer of said tires." (Revised Complaint, third count, ¶ 8.) As a result of his vehicle's collision into the trees, Dingwall suffered severe injuries and was pronounced dead later the same afternoon.
The plaintiffs also allege that the collision, injuries, and death were caused by Jukonski's willful. wanton and/or reckless misconduct by improperly installing snow tires on the cruiser; failing to warn Dingwall and other operators; failing to train and educate its agents, servants or CT Page 10183 employees about the safety guidelines and recommendations; failing to read and comprehend or ignoring and disregarding the safety guidelines and recommendations; and by, despite the fact that it knew or should have known that the improper tire configuration on the cruiser could lead to loss of control during a high speed pursuit, failing to take action to prevent it from being so used, in violation of the manufacturer's safety guidelines and recommendations. See Revised Complaint, third count, paragraph 10.
The allegations of the third count are realleged and incorporated in the fourth count. In this count, Kimberly Dingwall alleges that on January 28, 2000 she was Dingwall's wife. She asserts that, as a result of Jukonski's willful, wanton and/or reckless misconduct, she has suffered a loss of consortium. In their claim for relief, the plaintiffs seek punitive damages as to the third and fourth counts.
In the ninth count, the plaintiffs allege that, at all relevant times, Page provided tires, including Goodyear tires, for installation by Jukonski on the department's police vehicles. They claim that Page knew or should have known that Goodyear had issued bulletins containing safety recommendations concerning the installation of snow tires to all four-wheel positions of all police and emergency service vehicles. They also assert that Page knew or should have known that Jukonski had improperly installed the tires on cruiser #9806 and on other police vehicles, in violation of Goodyear's safety guidelines and recommendations. (See Revised Complaint, ninth count, ¶¶ 5-6.)
In paragraph 7 of the ninth count, the plaintiffs allege: "[d]espite the fact that it knew or should have known that Goodyear . . . had issued product service bulletins recommending that its winter snow tires be applied to all four-wheel positions of all police and emergency service vehicles in order to ensure safe operations and to optimize the handling, stability and traction of said vehicles, and despite the fact that it knew or should have known that an improper tire configuration on a police vehicle in a high speed pursuit, could compromise the stability of the vehicle and could lead to a loss of control of the vehicle and thereby result in severe injury or death of the occupants of said vehicle, . . . Page . . ., in reckless disregard of the safety of the operators and occupants of police cruiser #9806, including. . . Dingwall, allowed said police cruiser to be operated on January 28, 2000 with two front radial tires, one rear radial tire and one rear snow tire, in violation of the manufacturer's safety guidelines and recommendations."
The plaintiffs then repeat in the ninth count the allegations CT Page 10184 concerning the pursuit and the collision, which resulted in Dingwall's injuries and death. Further, in paragraph 12, they allege that the injuries and death were caused by Page's willful, wanton and/or reckless misconduct. In substance, as to Page, they repeat the allegations of failure to warn, and failure to read or comprehend or ignoring and disregarding concerning the Goodyear safety guidelines and recommendations. They also allege that, despite that it knew or should have known of the improper tire configuration on the cruiser. "it failed to take appropriate action to prevent the vehicle from being used in a high speed pursuit with an improper tire configuration in violation of the manufacturer's safety guidelines and recommendations." (Revised Complaint, ninth count, ¶ 12(e).)
In the tenth count, Kimberly Dingwall incorporates and realleges the allegations of the ninth count, and claims loss of consortium. In their prayer for relief, the plaintiffs seek punitive damages as to these counts.
The plaintiffs filed this action on February 11, 2002. In its motion, Jukonski contends that the third and fourth counts insufficiently state claims of recklessness. It argues that the facts alleged are, in essence, the same as those alleged in the first and second counts, which are grounded on negligence. It also asserts that the fourth count is insufficient since no reckless conduct involved Kimberly Dingwall. Jukonski also argues that punitive damages may not be awarded as to a loss of consortium claim which is premised on recklessness.[1] Page presents similar arguments concerning the ninth and tenth counts. claiming that they contain the same essential facts as alleged in the seventh and eighth counts, which are based on negligence. Jukonski and Page each presented memoranda of law in support of their motions. The plaintiffs filed objections and memoranda in response to the motions. The court heard oral argument at short calendar on July 22, 2002.
 II STANDARD OF REVIEW
"Whenever any party wishes to contest . . . the legal sufficiency of the allegations of any complaint . . . or of any one or more counts thereof, to state a claim upon which relief can be granted . . . that party may do so by filing a motion to strike the contested pleading or part thereof." Practice Book § 10-39(a). The court must "take the facts to be those alleged in the complaint . . . and . . . construe the complaint in the manner most favorable to sustaining its legal CT Page 10185 sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) Vacco v. MicrosoftCorp., 260 Conn. 59, 65, 753 A.2d 927 (2002). "Moreover . . . [w]hat is necessarily implied [in an allegation] need not be expressly alleged. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." (Citation omitted; internal quotation marks omitted.) Gazo v.Stamford, 255 Conn. 245, 260, 765 A.2d 505 (2001). In reviewing a motion to strike, the court is limited to the grounds set forth in the motion. See Blancato v. Feldspar Corp., 203 Conn. 34, 44, 522 A.2d 1235 (1987).
 III DISCUSSION A Recklessness
This court previously has addressed the issues involved in pleading recklessness as contrasted with pleading negligence. See Barone v.Connecticut Development Authority, Superior Court, judicial district of New Britain, Docket No. 504617 (April 2, 2001, Shapiro, J.). The same principles enunciated there are applicable here.
"The allegations of one count of a complaint based on common law reckless conduct must be separate and distinct from the allegations of a second count sounding in negligence." Hanchar v. Silver Hill Hospital, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 163502 (February 29, 2000, D'Andrea, J). "There is a wide difference between negligence and a reckless disregard of the rights or safety of others, and a complaint should employ language explicit enough to clearly inform the court and opposing counsel that reckless misconduct is relied on." (Internal quotation marks omitted.) Kostiuk v. Queally, 159 Conn. 91,94, 267 A.2d 452 (1970). "Simply using the word `reckless' or `recklessness' is not enough." (Internal quotation marks omitted.) Id.
[W]here the allegations of a count of a contested pleading support a cause of action of recklessness, the count sounding in recklessness may well be sufficient to withstand a motion to strike even though the allegations of reckless conduct are also alleged as a basis of negligent conduct in a count sounding in negligence." Haley v. Connecticut Light CT Page 10186Power, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 059027 (November 9, 1999, Nadeau, J.). "[T]here is no reason why the plaintiff, relying on the same set of facts in negligence counts, cannot set forth in separate counts, causes of action arising out of those same facts alleging recklessness." Adams v. Champagne, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 061154 (May 27, 1998, Corradino, J.) (22 Conn.L.Rptr. 241, 242). "It is frequently urged on this Court that the similarity of allegations renders one cause of action (usually, of course, the recklessness one) invalid. But similarity cannot be the sole focus. To so consider would often require a plaintiff to ratchet down the negligence claim in order to render more visible the conceptual space between the counts. Focus must instead primarily rest on the recklessness — sufficiency of that count." Haley v. Connecticut Light Power, supra, Superior Court, Docket No. 059027. "Rather than follow a mechanistic approach . . . it seems more appropriate. . . to examine instead whether the facts that are alleged could, under any set of facts admissible under the pleadings, support a conclusion of recklessness." Triano v. Fitzpatrick, M.D., Superior Court, judicial district of New Britain, Docket No. 494828 (February 17, 2000, Graham, J.) (26 Conn.L.Rptr. 454). "The plaintiff may claim alternative relief, based upon an alternative construction of the cause of action." Practice Book § 10-25.
The court finds that the plaintiffs' claims of recklessness are not destroyed merely because the plaintiff pleaded both negligence and recklessness based upon substantially the same allegations of fact. The plaintiffs set forth their causes of action based on recklessness and based on negligence in separate counts; see Hanchar v. Silver HillHospital, supra, Superior Court, Docket 163502; and explicitly set forth the facts which they allege constitute reckless conduct. See Faulkner v.United Technologies Corp., 240 Conn. 576, 588, 693 A.2d 293 (1997);Kostiuk v. Queally, supra, 159 Conn. 94.
"In order to establish that the [defendant's] conduct was . . . reckless . . . the plaintiff must prove, on the part of the [defendant], the existence of a state of consciousness with reference to the consequences of one's acts . . . . [Such conduct] is more than negligence, more than gross negligence. . . . [I]n order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them . . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. . . . [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of CT Page 10187 danger is apparent." (Internal quotation marks omitted.) Shay v. Rossi,253 Conn. 134, 181, 749 A.2d 1147 (2000). "Recklessness requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man, and the actor must recognize that his conduct involves a risk substantially greater. . . than that which is necessary to make his conduct negligent." (Internal quotation marks omitted.) Bishop v. Kelly, 206 Conn. 608, 614-15.539 A.2d 108 (1988). "It is at least clear . . . that such aggravated negligence must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention. . . ." (Internal quotation marks omitted.) Dubay v. Irish, 207 Conn. 518, 533, 542 A.2d 711
(1988).
For the purpose of determining whether a plaintiff sufficiently alleges a claim of recklessness, the court must take the plaintiff's allegations as true. See Dodd v. Middlesex Mutual Assurance Co., 242 Conn. 375, 378,698 A.2d 859 (1997). As to Jukonski, in the third and fourth counts, the plaintiffs allege that it acted recklessly when it knew or should have known about Goodyear's safety guidelines, but improperly installed snow tires on fewer than all four wheels of the cruiser. It is also alleged that Jukonski acted recklessly by failing to warn operators of the danger created thereby, such as Dingwall. The conduct alleged by the plaintiffs could be characterized by a trier of fact as "more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention"; Dubay v. Irish, supra, 207 Conn. 533; and as "such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action." Shay v. Rossi, supra, 253 Conn. 181.
As to Page, in the ninth and tenth counts. the plaintiffs allege that it provided tires to Jukonski for installation on police vehicles, and that it knew or should have known of Goodyear's safety guidelines and knew or should have known that Jukonski had improperly installed the tires on the cruiser. yet it failed to take action to prevent the cruiser from being used in a high speed pursuit. Again, for the purposes of the motion, the court must take such allegations to be true. In the face of the danger presented, such conduct could be characterized by a trier as reckless. See Shay v. Rossi, supra, 253 Conn. 181: Dubay v. Irish, supra, 207 Conn. 533.
The allegations present here go beyond alleging that each defendant knew or should have known of a hazardous situation but failed to act. SeeWiggins v. Melendez, Superior Court, judicial district of New Haven, CT Page 10188 Docket No. 408648 (December 9, 1998, Lager, J.); Diaz v. Shelat, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 467395 (March 16, 1998, Lager, J.). As to each defendant, it is alleged that an affirmative act occurred: as to Page, provision of tires to Jukonski; as to Jukonski, improper installation of the tires on the cruiser.
Consequently, the defendants' motions to strike the third, fourth, ninth, and tenth counts for insufficiently alleging recklessness are denied.
 B Loss of Consortium
Jukonski also seeks to strike the fourth count on the basis that the allegations do not include reckless conduct which pertained to Kimberly Dingwall. In addition, Jukonski asks the court to strike the plaintiffs' claim for relief to the extent that it seeks punitive damages based on loss of consortium.
Our Supreme Court has recognized the right to bring a common law claim for the loss of spousal consortium. See Jacoby v. Brinckerhoff,250 Conn. 86, 90, 735 A.2d 347 (1999). It has "defined consortium as encompassing the services of the [injured spouse], the financial support of the [injured spouse], and the variety of intangible relations which exist between spouses living together in marriage . . . . These intangible elements are generally described in terms of affection, society, companionship and sexual relations . . . . These intangibles have also been defined as the constellation of companionship, dependence, reliance, affection, sharing and aid which are legally recognizable, protected rights arising out of the civil contract of marriage." (Internal quotation marks omitted and citations omitted.) Id., 250 Conn. 90-91.
"[A]n action for loss of consortium, although independent in form, is derivative of the injured spouse's cause of action. . . ." (Internal quotation marks omitted.) Id., 250 Conn. 91-92. While derivative, "it is still a separate cause of action, dependent for its assertion on the legal viability of the cause of action in the injured party." Champagnev. Raybestos-Manhattan, Inc., 212 Conn. 509, 564, 562 A.2d 1100 (1989). In Champagne, the Supreme Court analyzed whether punitive damages should be available to the spouse in connection with a product liability claim. The court stated, "the law authorizes a recovery by each of these two different parties for the defendant's violation of their respective CT Page 10189 rights. . . . It seems to us that the core of the defendant's conduct in this case is not merely its manufacture and distribution of the product involved in this case but the injury it caused. In cases of this type, where conduct of a defendant in a strict tort liability action has been found to be such as to warrant the imposition of punitive damages on the strict liability count . . . ., we see no logical or conceptual barrier to the imposition of such damages on a consortium count, especially because the nature of the defendant's conduct was a wrong not only to the decedent but also to his or her spouse." (Citations omitted.) Id., Conn. 564-565.
This reasoning should govern the case at bar as well. Kimberly Dingwall's rights, while derivative of those of her husband, entitle her to state a cause of action of a separate nature. The same recklessness which allegedly caused her husband's injuries and death allegedly caused her losses as well. From a conceptual standpoint, therefore, since the court has determined that the allegations are legally sufficient to state a claim for recklessness, they are also sufficient to state a claim for loss of consortium based on recklessness. As noted, Kimberly Dingwall has incorporated the third count's recklessness allegations, as pleaded by Dingwall's estate, in her recklessness/loss of consortium claim, which is set forth in the fourth count.
Jukonski cites a split among the Superior Courts concerning whether double and treble damages are available under General Statutes § 14-295
on a loss of consortium claim, and notes that the difference of opinion depends on statutory interpretation. (See Jukonski's memorandum of law. p. 10.) Punitive damages may be awarded on a claim premised on common law recklessness. See Markey v. Santangelo, 195 Conn. 76, 77-78, 485 A.2d 1305
(1985). Kimberly Dingwall's loss of consortium claim is derived from the common law, not from a statute. In Champagne, as discussed above, our Supreme Court authorized an award of punitive damages on a loss of consortium claim premised on product liability, based on the rationale that the same conduct caused the spouse's loss of consortium. That rationale is equally applicable here. The same alleged conduct which caused her husband's injuries and death also caused Kimberly Dingwall's losses as well. Under the circumstances, punitive damages ought to be available to her as well. See Landers v. Schwartz, Superior Court, judicial district of Hartford, Docket No. 595398 (September 19, 2000,Rubinow, J.) (28 Conn.L.Rptr. 147).
 V CONCLUSION CT Page 10190
For the foregoing reasons, the court denies the defendants' motions to strike. It is so ordered.
BY THE COURT
 ____________________________ ROBERT B. SHAPIRO JUDGE OF THE SUPERIOR COURT